UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**PAMBELA CARTER,**

    Plaintiff,

v.                                          Case No: 5:23-cv-566-JSM-PRL

**CARDINAL GLASS INDUSTRIES, INC.,**

    Defendant.

### Order

In this employment discrimination suit, Defendant Cardinal Glass Industries, Inc. ("Cardinal") has filed a motion to compel Plaintiff Pambela Carter to produce complete discovery responses and submit her cell phone, emails, and social media for a forensic examination under Federal Rule of Civil Procedure 37. (Doc. 16). Plaintiff opposes the motion. (Doc. 18).

**I.   LEGAL STANDARD**

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007).

Indeed, parties are entitled to discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case, considering various factors. Fed. R. Civ. P. 26(b)(1). Specifically: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Under Rule 26, the Court has broad discretion to limit the time, place, and manner of discovery as required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The Court's exercise of discretion to appropriately fashion the scope and effect of discovery will be sustained unless it abuses that discretion to the prejudice of a party. *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1505 (11th Cir.1985); see also *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir.1991) ("The trial court ... has wide discretion in setting the limits of discovery, and its decisions will not be reversed unless a clearly erroneous principle of law is applied, or no evidence rationally supports the decision.").

Relevancy and proportionality are the guiding principles. The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 6:15-cv-1185, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-cv-205, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). Relevancy is based on the "tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *Garcia v. Padilla*, No. 2:15-cv-735, 2016 WL 881143, at *2 (M.D. Fla. March 8, 2016) (quoting

Fed. R. Evid. 401). The Courts and the parties must consider and evaluate "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b) (1) ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Comment, 2015 Amendment).

**II.  DISCUSSION**

    **A.  Interrogatories**

Defendant seeks to compel Plaintiff to provide full and complete responses to Interrogatory Nos. 8 and 9, which seek the following:

> No. 8: Identify all entities for which you have provided services in exchange for compensation since March 16, 2023, including the name(s) of each entity, date(s) of employment or contractual relationship, job title(s) or role(s) with each entity, and nature/amount of compensation (e.g., $10/hour).
>
> No. 9: Identify the amount and source of all money, compensation, income, or payment of any kind you received from any other source from March 16, 2023, to the present.

There is no dispute that the interrogatories seek information directly related to Plaintiff's damages and her efforts to mitigate damages after leaving Cardinal. *See e.g., Russell v. City of Tampa, Fla.,* No. 8:16-cv-912-T-30JSS, 2017 WL 2869518, at *5 (M.D. Fla. July 5, 2017) (finding discovery seeking subsequent employment information relevant to mitigation of damages and the measure of plaintiff's claims for front and back pay).   Indeed, Plaintiff responded to both interrogatories, without raising any objection.

Defendant argues that Plaintiff's supplemental responses to both interrogatories are not sufficient because they fail to precisely state the name and dates of all employment and the nature/amount of compensation. (Doc. 17, Exhibit J at 2-4). For example, Plaintiff states that she began working for TWG Residential Services L.L.C. and "would earn about $1,620.00 by earning average per day of $180.00 for three days of the week for three weeks." She then states that after finishing her work with TWG, she "would earn an average of about $500.00 - $900.00 per week," but fails to identify for whom she was working and the dates of the work. Next, Plaintiff states that she began working with "Diversified Maintenance around May 2023 . . . and stopped on the beginning of July 2023." As for Southern Maintenance Services, Plaintiff states that she began working "early June of 2023 and presently cleans for them every two weeks $180.00. early July of 2023 when Plaintiff began working with DBS cleaning solutions and would earn an additional approximate of $320.00 per week." Plaintiff claims that she concluded her work with DBS "on or about early August of 2023" and she was earning "the lowest $150.00 per week to the highest $1,200.00."

The Court agrees that these responses are not specific enough for Defendant to know precisely when Plaintiff was employed and how much Plaintiff earned since leaving Cardinal. Accordingly, within **TEN DAYS** of this Order, Plaintiff shall provide complete and precise responses to Interrogatories No. 8 and No. 9, including detailed and specific information on all compensation she has earned since separating from Cardinal.

B.    **Requests for Production**

Similarly, Defendant moves to compel Plaintiff to provide complete responses to Requests for Production Nos. 4, 5, 6, 11, 18, 19, and 20.

Four of the requests (Nos. 4, 5, 6, and 11) seek documents related to Plaintiff's economic damages and mitigation efforts. Specifically, Defendant asks Plaintiff to provide copies of any documents supporting her claimed wage loss and mitigation of damages, including tax returns, W2s, 1099s, paystubs or copies of checks, and any other compensation/earnings documents. For the same reasons as discussed above—and in the absence of any timely objections—the Court finds these requests to be relevant and proportional to the needs of the case.

Plaintiff's initial production did not include any documents responsive to Nos. 4 or 11. (Doc. 17, Exhibit D). Plaintiff's supplemental production included one paystub from McLane Company, one email about a $515 payment from TWG Residential (with no supporting documentation relating to this payment), and four screenshots of direct deposits from Southern Maintenance in November and December 2023 (with no supporting documentation regarding these payments). (Doc. 17, Exhibit J). As for No. 6, Plaintiff produced a list of emails related to Plaintiff's job applications and interviews and a subcontractor agreement with DBS. (Doc. 17, Exhibit D, Exhibit J). And while Plaintiff produced a "Wage and Income Transcript" and a 2020 tax return, she has not produced her tax returns for 2021 or 2022 as requested by No. 5. (Doc. 17, Exhibit D, Exhibit J).

This limited response fails to provide a complete picture of the amounts earned by Plaintiff. Based on the supplemental answer to Interrogatory No. 6, Plaintiff has only provided partial payment information for compensation from TWG Residential Services and Southern Maintenance Services and no documentation regarding her own business and Diversified Maintenance. Defendant is entitled to this documentation so that it can verify the

accuracy of Plaintiff's other responses and to support its affirmative defense relating to mitigation.

Accordingly, within **TEN DAYS** of this Order, Plaintiff shall produce all responsive documents to Requests for Production Nos. 4, 5, 6, and 11.

The remaining requests (Nos. 18, 19, and 20) seek copies of communications (including emails, text messages, and social media messages) between Plaintiff and certain individuals related to Plaintiff's claims of harassment and retaliation. Plaintiff raised no timely objections to these requests. Now, in response to the instant motion, Plaintiff contends that she has produced all messages and communications in her possession and asserts (without offering any evidentiary support) that her cell phone was physically destroyed (before filing this action), so she does not have access to any other messages.

Request 19 seeks any messages and communications between Plaintiff and her former co-employee at Cardinal, Torishae Hagins, whom Plaintiff alleges harassed her. Plaintiff has not produced any responsive documentation, and despite requests, Plaintiff has not confirmed that she has none. (Doc. 17, Exhibit K). Within **TEN DAYS** of this Order, Plaintiff shall produce copies of all communications with Torishae Hagins or confirm that she has none.

Otherwise, Plaintiff has produced a one-page PDF of a forwarded email message between Plaintiff and Cardinal's HR Manager, Valerie Hunt, as well as a one-page PDF containing two apparent screenshots of a text message conversation purportedly between Plaintiff and a Cardinal manager named "Eric Manager." (Doc. 17, Exhibit L). Despite repeated requests from Defendant, Plaintiff has not produced native copies of these communications so that complete metadata could be reviewed. (Exhibit 17, Exhibits E, G,

and K). Defendant contends that there is a discrepancy between the copy of the email produced by Plaintiff and the copy that Cardinal has in its possession. (Doc. 17, Exhibit N).

In addition, Request 20 seeks copies of all messages and communications between Plaintiff and her former supervisor, Lemuel Wilkerson. Plaintiff has produced PDF screenshots of some (but Defendant claims not all) Facebook direct messages between them. And Plaintiff has not produced any text messages between her and Mr. Wilkerson, which Defendant contends exist.

Given the above concerns about the completeness of Plaintiff's discovery responses, and lack of metadata provided for communications and messages, Defendant has requested a forensic examination of Plaintiff's cell phone, emails, and social media messages, subject to the stipulated forensic examination protocol proposed by Defendant. (Doc. 17, Exhibit F). While recognizing Defendant's frustration, the Court is disinclined at this time to order a forensic examination because it appears that the requested information could be obtained through less intrusive means, such as third-party subpoenas to Plaintiff's service providers.

Accordingly, within **TEN DAYS** of this Order, Plaintiff shall:

(1) Provide proof that her cell phone was destroyed and replaced, including a timeline for these events.

(2) Provide her cell phone number(s) and the name of her cell phone provider(s), and the dates such service was provided, so that Defendant can subpoena records.

(3) Advise Defendant whether Plaintiff utilizes a cloud service for backup, and if so, produce the name of the provider so Defendant can subpoena records.

(4) Provide the email address(es) that Plaintiff uses, as well as the email provider(s) so that Defendant can subpoena records.

### C. Sanctions

Finally, as for Defendant's request for sanctions, the Court finds that, an award is mandated by Rule 37(a)(5)(A). Where, as here, the motion to compel is granted, and is caused by the failure of a party to provide responsive answers to discovery requests, the Court is required to award the fees and expenses incurred in filing the motion. Only if the Court determines that the motion was filed without the moving party having made a good faith effort to obtain the discovery without court action or the Court determines that the response of the non-moving party was substantially justified or if other circumstances make an award of expenses unjust, is the Court authorized to deny the request for sanctions.

None of those exceptions are presented here. Indeed, before filing this motion, defense counsel on several occasions corresponded with Plaintiff's counsel in efforts to obtain the discovery. Moreover, Plaintiff has not offered substantial justification for her failure to provide complete discovery responses, nor has she provided any circumstances that would make an award unjust. For these reasons, Defendant is entitled to reimbursement for the fees and expenses incurred in preparing and filing the instant motion.

Accordingly, Plaintiff is hereby ordered to pay to Defendant the reasonable expenses and attorney's fees incurred by counsel in preparing and filing the instant motion. Defendant shall submit within **TEN DAYS** of the date of this Order an affidavit detailing the reasonable expenses and fees incurred in preparing and filing the motion to compel. To the extent that Plaintiff objects to the amount of expenses and fees claimed by Defendant, Plaintiff shall file a response within **TEN DAYS** of service of Defendant's affidavit. Upon receipt of Defendant's affidavit and any objections by Plaintiff, the Court will enter an appropriate award or, if necessary, set the matter for an evidentiary hearing.

**DONE** and **ORDERED** in Ocala, Florida on April 18, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties